UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────

ROBERT R. SCHULZ, *et al.*,

        Plaintiffs,

    -v.-

STATE OF NEW YORK, *et al.*,

        Defendants.
───────────────────────────────────

1:07-CV-0943
(LEK/DRH)

## **MEMORANDUM-DECISION AND ORDER**[1]

Presently before the Court are fifty-two (52) Motions to dismiss the Plaintiffs' Amended Complaint (Dkt. No. 21) filed by the Defendants in this case: the fifty States and Commonwealths of the United States ("State Defendants" or "States"), the State Boards of Elections of eight (8) of the States ("Election Board Defendants" or "State Election Boards"), and eighty-six (86) individuals involved in their states' election process ("Individual Defendants"), who are Defendants individually and in their official capacity (collectively "Defendants").[2]  Dkt. No. 22, 23, 24, 36, 39, 70, 94, 95, 99, 108, 111, 128, 133, 135, 136, 140, 144, 147, 149, 152, 154, 162, 163, 164, 166, 167, 168, 169, 170, 171, 172, 175, 179, 180, 183, 184, 185, 186, 188, 189, 190, 192, 194, 195, 196, 197, 198, 199, 200, 203, 204, 205.  Plaintiffs consist of over 150 individuals, proceeding *pro se*, who reside in and intend to vote in each of the fifty states' primary and general elections.  Plaintiffs

---

    [1] For printed publication in the Federal Reporter.

    [2] Individual Defendant Mary Herrera filed an Answer to the Amended Complaint on November 23, 2007.  Dkt. No. 51.  As is discussed below, because the Court does not have personal jurisdiction over any of the non-New York Individual Defendants, including Ms. Herrera, the Amended Complaint will be dismissed as against her as well.

1

responded to the Motions to dismiss on December 28, 2007 and filed a cross-Motion for summary judgment. Dkt. No. 223. The cross-Motion for summary judgment has been stayed pending the Court's decision on the Motions to dismiss. Dkt. No. 233. Replies to Plaintiffs' response have been received by the Court by several of the Defendants, while some Defendants have adopted the Replies of other Defendants or notified the Court of their intention not to reply.

**I.     Background**

Plaintiffs' Amended Complaint, filed on November 1, 2007, asserts that the vote counting process for the 2008 elections violates the Plaintiffs' voting rights, contract rights, and Constitutional rights. See Amended Complaint ("A.C.") ¶¶ 228-62 (Dkt No. 21). Plaintiffs allege that Defendants violate their rights by using "machines and/or computers" for vote casting and counting, by failing to count ballots by hand, by failing to keep ballots "in public view or in the public custody before the votes are counted and publicly posted at each and every voting station," and by failing to publicly announce the number of votes cast for candidates at each voting station. A.C. ¶¶ 218-20.

In their first cause of action, Plaintiffs allege that the voting procedures used by Defendants infringe on Plaintiffs' right to vote as articulated by the Supreme Court in Burdick v. Takushi, 504 U.S. 428 (1992). A.C. at ¶ 247. In their second cause of action, Plaintiffs allege that the voting procedures are a violation of Plaintiffs' "contract rights," based on the assertion that "[f]ormally registering with the State to vote . . . is a contract." A.C. at ¶ 252. For the third cause of action, Plaintiffs submit a set of voting procedures that they allege Defendants are Constitutionally required to follow during the 2008 primary and general elections. Id. at ¶ 262.

Plaintiffs seek a permanent injunction preventing Defendants from conducting any election in the 2008 election cycle and beyond unless the election: (1) is "open, verifiable, transparent, machine-free, and computer-free," (2) "rel[ies] exclusively on paper ballots, hand marked and hand counted," and (3) "during which said paper ballots [] remain in full public view until the results of the hand counting is publicly announced at that vote station." A.C. at ¶ 268.

In their Motions to dismiss, Defendants argue primarily that (1) the States and the Election Board Defendants are protected from suit by sovereign immunity and/or are not a proper party because they are not persons within the meaning of 42 U.S.C. § 1983,(2) this Court lacks personal jurisdiction over the Individual Defendants, and (3) the Complaint fails to state a cause of action.

## II.   Discussion

### A.   Standing

Several Defendants argue that the out of state Plaintiffs lack standing as against the Individual Defendants in the State.[3] The Plaintiffs have the burden to establish standing to sue each Defendant. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107 (1998); Whitmore v. Arkansas, 495 U.S. 149, 154-56 (1990). To establish standing, each Plaintiff must prove that a real injury is present or threatened at the time the Complaint is filed, and will likely continue or occur if the Defendants' conduct is not checked by the Court. Friends of the Earth, Inc. v. Laidlaw Envtl.

---

[3] For example, the Wisconsin Defendants argue that only the Wisconsin Plaintiffs have standing to sue the Wisconsin Defendants because the other Plaintiffs have not "alleged that they are able or intend to vote in any election in Wisconsin, or that their votes might not be accurately tabulated in Wisconsin" and accordingly "they cannot actually be harmed by any conduct of the Wisconsin defendants in conducting elections in Wisconsin." Wisconsin Motion to Dismiss, at 6-8 (Dkt. No. 162, Attach. 1).

Serv., Inc., 528 U.S. 167, 189-91 (2000); Whitmore, 495 U.S. at 158.

Plaintiffs alleged in the Amended Complaint that "[e]ach Plaintiff is suing his or her State among others," but do not distinguish between the States and the Individual Defendants. A.C. at ¶ 3 (Dkt. No. 21). Plaintiffs have not alleged that any of them are able to or intend to vote in any election other than in their own state of residence, or that their votes might not be accurately tabulated in a state in which they do not reside. Accordingly, because Plaintiffs not residing in the same state as the Individual Defendants in any given state cannot be harmed by conduct of those Individual Defendants in their own states, each of the Plaintiffs' standing is limited so as to only have standing against the Individual Defendants in the Plaintiff's own state.

### B.    Personal Jurisdiction[4]

A plaintiff bears the burden of establishing that the Court has personal jurisdiction over each of the defendants. Florczak v. Staffieri, No. 3:06-cv-0064, 2006 WL 1085173, at *1 (N.D.N.Y. Apr. 25, 2006). At the pleading stage, a plaintiff is required to make at least a prima facie showing that such jurisdiction exists. Id. (citing A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-90 (2d Cir. 1993)).

Personal jurisdiction over a non-domiciliary defendant in a diversity or federal question case, like the instant action, is determined by reference to the law of the state in which the court sits, unless otherwise provided by federal law. Fed. R. Civ. P. 4(k)(1)(A); Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir.1985). Because New York's long-arm statute does not extend as far as federal due process permits, the analysis of whether this Court has personal

---

[4] This Court's personal jurisdiction over the New York Individual Defendants is not challenged. Those Defendants will be discussed separately.

jurisdiction over a particular defendant proceeds in two steps. Wing Shing Products v. Simaltex Manufactory Co., 479 F. Supp. 2d 388 (S.D.N.Y. 2007); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002). The Court must first determine if New York law would confer upon its courts the jurisdiction to reach the defendant. Bank Brussels Lambert, 305 F.3d at 124. If there is a basis for jurisdiction under New York law, the Court must then determine whether New York's extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment. Id.

Under New York law, a court may exercise personal jurisdiction over a non-domiciliary defendant in one of two ways. The Court may either exercise general jurisdiction if the defendant "does business" in New York, pursuant to N.Y. C.P.L.R. § 301, or it may exercise specific jurisdiction if the defendant falls under New York's long-arm statute, N.Y. C.P.L.R. § 302. Maggi v. Women's College Hospital, No. 03-0768, 2007 WL 841765, at *2 (N.D.N.Y. Mar. 19, 2007).

A Court may have general jurisdiction under N.Y. C.P.L.R. § 301, which "authorize[s] the exercise of jurisdiction over a foreign corporation if the defendant 'does business' in New York in the '*traditional sense*.'" Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 198 (2d Cir. 1990) (quoting Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533, 536, 43, 227 N.E.2d 851, 53 (emphasis in original), *cert. denied*, 389 U.S. 923 (1967)). "The latter phrase has been consistently interpreted to mean that section 301 applies only when the defendant is 'engaged in such a continuous and systematic course of "doing business" [in New York] as to warrant a finding of its "presence" ' in the jurisdiction." Id. (alteration in original).

Plaintiffs argue that this Court has general jurisdiction over all Defendants and allege that "all Defendants maintain continuous and systematic contact" because the non-New York

5

Defendants conduct elections for President of the United States, and the results of the presidential election affect the New York Plaintiffs.  Plntfs' Mem. in Response, at 6 (Dkt. No. 223).  Plaintiffs then argue that "all Defendants maintain continuous and systematic contact with the New York based consortium, the National Election Pool (NEP), which includes the New York City based Associated Press and . . . ABC, CBS, CNN, FOX and NBC television networks."  Id.  Neither the Associated Press nor any of those television networks are listed as Defendants in this case.  Their only connection to the Defendants consists of the Defendants' alleged use, asserted for the first time in the Plaintiffs' Response papers, that the Defendants relied upon NEP for tabulation of voter returns and the announcement of the election results, the completion by the States of survey forms prepared by NEP, and the use by the States of exit polls using forms prepared by NEP and conducted by an NEP contractor.  Id.

Plaintiffs, by claiming that the non-New York Defendants "maintain continuous and systematic contact" with New York, borrow language from the test created for a finding that a foreign corporation is amenable to suit in New York courts under N.Y. C.P.L.R. § 301 because it is "doing business" in the state.  Simonson v. International Bank, 14 N.Y.2d 281, 200 N.E.2d 427 (1964).  Under that test, a foreign corporation is subject to jurisdiction in New York "if it has engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted."  Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 77 N.Y.2d 28, 33, 565 N.E.2d 488, 490 (1990) (quoting Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany, 278 N.E.2d 895, 896-97 (1972) (applying N.Y. C.P.L.R. § 301)).  The test for 'doing business' "is a simple and pragmatic one" and the Court "must be able to say from the facts that the corporation is 'present' in the State not occasionally or casually, but with a

fair measure of permanence and continuity." Id., 77 N.Y.2d at 33-34 (internal citations and alterations omitted); Genpharm Inc., v. Pliva-Lachema a.s., 361 F. Supp. 2d. 49, 56 (E.D.N.Y. 2005) ("Occasional or casual business in New York will not meet the requirements of Section 301.").

The Court finds that the non-New York Defendants are not "doing business" in New York and do not "maintain continuous and systematic contact" with New York. The effect of another state's election results on the New York Plaintiffs does not constitute "continuous and systematic contact" by the election officials of that state with the New York Plaintiffs or New York State. Even the allegations, not included in the Amended Complaint, that the non-New York Defendants interacted with television networks in New York establish, at most, only occasional or casual contacts and are not sufficient for the Court to find that those non-New York Defendants are "doing business" in New York.

The Plaintiffs have also not established jurisdiction under New York's long-arm statute. New York's long-arm statute allows a court to exercise personal jurisdiction over a foreign defendant if any of the following circumstances are met: (1) the defendant transacts business within the state or supplies goods or services in the state; (2) the defendant commits a tortious act within the state; (3) the defendant, commits a tort outside the state, causing injury to persons or property within the state and he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and defendant derives substantial revenue from interstate or international commerce; or (4) the defendant owns, uses or possesses any real property situated within the state. N.Y. C.P.L.R. § 302(a).

To transact business in New York pursuant to N.Y.C.P.L .R. § 302(a)(1), a party must purposefully avail themselves of the privileges of conducting business in New York in a manner that invokes the benefits and protections of its laws. United Computer Capitol Corp. v. Secure Products, L.P., 218 F.Supp.2d 273, 277 (N.D.N.Y. 2002). A Court is required to look at the totality of the circumstances to determine if purposeful activity exists, and may not subject a defendant to jurisdiction based on "random, fortuitous, or attenuated contacts." Id. Plaintiffs have failed to provide sufficient factual allegations to support a finding that any of the non-New York Defendants transact business within the state of New York pursuant to N.Y. C.P.L.R. § 302(a)(1).

In addition, Plaintiffs have not alleged that any of the non-New York Defendants have committed any torts or that they own, use, or possess any real property in New York State. Although Plaintiffs argue in their Reply, under the heading of sovereign immunity, that "all non-domiciliary Defendants have made the decision to commit the *constitutionally tortuous act* of counting IN SECRET the votes for President of the United States of America. . .", this does not constitute a tort under New York law. Plntf's Reply Mem. at 10 (emphasis in original); see Bank Brussels Lambert, 305 F.3d at 125 (to satisfy section 302(a)(2) or (3), a plaintiff must "aver facts constituting a tort under the law of the pertinent jurisdiction."). In addition, this claim does not meet the requirement of Section 302(a)(3), which requires that a defendant committing a tort outside the state either (i) regularly do or solicit business in the state, engage in any other persistent course of conduct in the state, or derive substantial revenue from goods used or consumed or services rendered in the state, or (ii) that the defendant expect or should reasonably expect the allegedly tortious act to have consequences in the state and defendant derives substantial revenue from interstate or international commerce. N.Y. C.P.L.R. § 302(a)(3). Plaintiffs' argument is thus

insufficient to establish personal jurisdiction under New York's long-arm statute.

The Court finds that Plaintiffs have failed to plead a prima facie case sufficient to support a finding of personal jurisdiction over any of the non-New York Individual Defendants in this matter, including the Election Boards.[5]  Because the Court lacks personal jurisdiction over the non-New York Defendants under either N.Y. C.P.L.R. § 301 or § 302, it is not necessary for the Court to consider whether personal jurisdiction in this case would be permissible under the Due Process Clause of the Fourteenth Amendment.  There is no basis for this Court to conclude that it has jurisdiction over those Defendants, and Plaintiffs' claims are accordingly dismissed, without prejudice, as against all non-New York Individual Defendants, including the Election Boards.[6]

### C. Immunity of the State Defendants and Election Board Defendants[7]

The Eleventh Amendment generally bars claims in federal court against the States and their agencies.  See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984).  Under Ex Parte Young, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in his official capacity–notwithstanding the Eleventh Amendment–for prospective, injunctive relief from

---

[5] The Court has general jurisdiction over the New York Individual Defendants under Section 301 because they are domiciliaries and present in the state.  N.Y. C.P.L.R. § 301; Rawstorne v. Maguire, 265 N.Y. 204, 207, 192 N.E. 294, 295 (1934) ("We may assume that the courts of the State can by [a reasonable method of] service obtain jurisdiction of the person of one who is physically within the State.").

[6] One Defendant, Mary Herrera, filed an Answer to the Amended Complaint on November 23, 2007 (Dkt. No. 51).  Because the Court finds that it lacks personal jurisdiction over the other 81 non-New York Individual Defendants, and in the interests of judicial economy, the Court will dismiss the Amended Complaint, without prejudice, against Defendant Mary Herrera as well.

[7] Several of the Defendants have also argued that the States and the State Election Boards are not "persons" under the meaning of 42 U.S.C. § 1983.  Because the claims against the States and the State Election Boards are barred by sovereign immunity, the Court will not address those arguments.

violations of federal law." In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007) (internal quotation marks omitted). Nonetheless, the rule in Ex Parte Young does not allow injunctive action against a state or state agency, as opposed to state officers. Ashe v. Board of Elections, No. CV-88-1566, 1998 WL 95427, at *2 (Sep. 8, 1988). The Eleventh Amendment also immunizes a state entity that is an "arm of the State." In re Deposit Ins. Agency, 482 F.3d at 617; see also Northern Ins. Co. of N.Y. v. Chatham County, Ga., 547 U.S. 189, 193 (2006) ("States and arms of the State possess immunity from suits authorized by federal law."). Since none of the States or State Boards of Election have consented to be sued in federal court or to be sued under 42 U.S.C. § 1983 or 42 U.S.C. § 1985, and Congress has not abrogated the States' Eleventh Amendment immunity from suit in civil rights actions under 42 U.S.C. § 1983 or 42 U.S.C. § 1985[8], the Court finds that the State Defendants and the Election Board Defendants are immune from being sued in this Court and all claims against them are hereby dismissed with prejudice.

### D.     New York Defendants

The only Defendants remaining in this case are the New York Individual Defendants: Neil Kelleher, Douglas Kellner, Evelyn Aquila and Helena Moses Donohue, both individually and in their official capacities as Commissioners of the New York State Board of Elections. As previously discussed, only the New York Plaintiffs have standing to bring claims against the New York Individual Defendants. Because the New York Individual Defendants are the only defendants remaining in this action, all non-New York Plaintiffs are dismissed from the case. The remaining Plaintiffs are Robert L. Schulz, Arthur Berg and John Liggett ("New York Plaintiffs").

---

[8] See, e.g., Quern v. Jordan, 440 U.S. 332, 341-45 (1979). In their response papers to the Motions to dismiss, Plaintiffs do not respond to this argument or present any argument that these Defendants are not immune. Dkt. No. 223.

10

The New York Individual Defendants argue that the New York Plaintiffs have failed to state a claim upon which relief can be granted because the New York Individual Defendants are not entrusted with administering the elections in this state and are not responsible for determining the specific methods of voting in each of New York's 62 counties. New York Individual Defendants' Motion to Dismiss ("N.Y. Ind. Motion") at 2-3 (Dkt. No. 199). They contend that, under the New York Election Law, it is the local or county boards of elections that are empowered to determine the voting methods utilized in New York State's elections. Id. (citing N.Y. Election Law §§ 7-200(1); 3-226). Consequently, they argue that they are not proper parties because they are without the authority to grant the relief sought by the New York Plaintiffs.

This argument lacks merit, as suggested by the Individual New York Defendants' failure to cite even a single supporting case. In fact, such law as exists on this issue suggests the opposite conclusion. A state official is a proper party to a lawsuit seeking to enjoin enforcement of an unconstitutional act if he is specifically authorized to enforce that act. See Donohue v. Bd. of Elections of the State of New York, 435 F.Supp. 957, 963 (E.D.N.Y.1976); Oliver v. Bd. of Ed. of City of New York, 306 F.Supp. 1286, 1288 (S.D.N.Y.1969). Accordingly, "a state official may properly be made a party to a suit seeking to enjoin the enforcement of an allegedly unconstitutional act if that official *plays some role* in the enforcement of the act." Donohue, 435 F.Supp. at 963 (citations omitted) (emphasis added).

The New York Individual Defendants are proper parties to this suit if they or the New York Board of Elections ("State Board") plays "some role" in the enforcement of the acts complained of, namely the selection of voting methods and the execution of the elections. As relief, Plaintiffs seek the implementation of specific methods for voting and vote-counting. Although the New York

11

Individual Defendants are correct in asserting that under New York law, local election boards bear the primary responsibility for the administration of elections, the State Board is specifically authorized to investigate alleged violations of the Election Law and enforce the applicable provisions. See Election Law § 3-107 ("Authority is hereby conferred upon the state board of elections to appoint a special investigator to take charge of the investigation of cases arising under the election law, and to appoint such additional special investigators and employees as it may deem necessary . . . for the purpose of enforcing the provisions of the election law."). Under New York law, the State Board has "jurisdiction of, and [is] responsible for, the execution and enforcement of . . . statutes governing campaigns, elections and related procedures." N.Y. Elec. L. § 3-104. In addition, the State Board approves voting machines (see, e.g., Election Law § 7-200, 7-202) and issues regulations regarding contracts for the purchase of voting machines (Election Law § 7-204). These connections are adequate grounds for making the Commissioners of the State Board of Elections a proper party. See also Schulz v. Williams, 44 F.3d 48, 61 n. 13 (2d Cir. 1994) (finding that the New York State Board of Elections members "have the requisite 'special relation' to the contested [Election Law] provision to render them proper defendants.") (quoting Ex parte Young, 209 U.S. at 157)).

      **E.**    **Breach of Contract Claim**

The New York Individual Defendants argue that the New York Plaintiff have failed to state a cause of action against them for breach of contract. These Defendants note that they are not responsible for registering any voters as that authority lies with the county or local boards of elections, and adopt the State of Ohio's Motion to dismiss ("Ohio Motion") (Dkt. No. 175) with respect to the breach of contract claim. N.Y. Ind. Motion at 3-4 (Dkt. No. 199). The Ohio

Defendants argued that Plaintiffs failed to plead the existence of a contract because filling out a voter registration form does not amount to entering a contract with the State of Ohio. Ohio Motion at 5 (Dkt. No. 175). They also argued that even if there was a contract, there is no basis for a § 1983 lawsuit because there is no constitutional claim. Id. at 6.

Indeed, "[a]n individual breach of contract . . . does not reach constitutional dimensions and create a cause of action based on the contract clause." TM Park Avenue Associates v. Pataki, 214 F.3d 344, 348 (2d Cir. 2000). When a party alleges that he has a contract with the state, which the state, through its legislative authority, has attempted to impair, then a federal cause of action is stated under the contract clause. City Railway Co. v. Citizens' Street Railroad Co., 166 U.S. 557, 563 (1897). However, mere refusal to perform a contract by a state does not raise a constitutional issue.

It is unclear whether Plaintiffs are raising a constitutional claim under the contract clause or a state-law claim for breach of contract. To the extent that the claim is a constitutional one under the contract clause, it fails. However, because Plaintiffs are proceeding *pro se*, the Court must liberally construe their pleadings, and must "interpret them 'to raise the strongest arguments that they suggest.' " See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994)).

Accordingly, interpreting the second cause of action as a claim for breach of contract, this Court has supplemental jurisdiction to consider that claim under New York state law. Nonetheless, it is not clear whether Plaintiffs are claiming that the alleged contract is based on a contractual relationship created by the New York Election Law or is an implied-in-fact or even actual contract based on the voter registration form. The Court will consider the alternatives briefly.

       1.     Contract based on the New York Election Law

It is possible to read the New York Plaintiffs' Amended Complaint as contending that the New York Election Law created a contract right enforceable against the State.  It is black letter law that absent some clear indication that the Legislature intends to bind the State contractually, a statute is presumed not to create private contractual or vested rights, but merely to declare a policy to be pursued until the Legislature shall ordain otherwise.  Dodge v. Board of Educ., 302 U.S. 74, 79 (1937).  This strong presumption is based upon the premise that the Legislature's principal function is to make laws to establish the policy of the State and not to make contracts, and that policies, quite unlike contracts, are inherently subject to revision and repeal.  National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co., 470 U.S. 451, 466 (1985).  The party asserting the creation of a contract must overcome this presumption (id.) and it is well settled that before a law may be deemed to be a contract between the State and another party (in this instance many tens of thousands of voters), examination of the statutory language must show it to be plain and susceptible of no other reasonable construction than that a contract was intended.  Id.; Pennsylvania R.R. Co. v. State of New York, 11 N.Y.2d 504, 511, 184 N.E.2d 588 (1962). The New York Court of Appeals in Pennsylvania R.R. Co. v. State of New York stated:

> "It is never to be assumed," this court has said, "that the State has . . . fettered its power in the future, except upon clear and irresistible evidence that the engagement was in the nature of a private contract, as distinguished from a mere act of general legislation; and that such, in the particular instance, was the actual and deliberate intention of the State authorities"

Id., 11 N.Y.2d at 511 (quoting People v. Roper, 35 N.Y. 629, 633(1866)).  Before a statute will be deemed to be a contract, its language and circumstances must "manifest a legislative intent to create private rights of a contractual nature enforceable against the State." Cook v. City of Binghamton,

14

48 N.Y.2d 323, 330, 398 N.E.2d 525 (1979).  The initial question, then, is whether the Legislature, in passing the Election Law Article 5 ("Registration and Enrollment of Voters") intended to create private rights of a contractual nature enforceable against the State.  See Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v. State of New York, 79 N.Y.2d 39, 45, 580 N.Y.S.2d 153, 588 N.E.2d 51 (1992).  The Court finds that it did not.

The elections in New York are comprehensively and pervasively regulated, and the voter registration sections of the Election Law are merely one measure of governing the procedure. Unlike statutes establishing, e.g., pension benefits, Article 5 of the Election Law grants no benefit to voters and merely facilitates their exercise of their right to vote.  See, e.g., Blusal Meats, Inc. v. United States, 638 F. Supp. 824, 831 (S.D.N.Y. 1986) (finding that food stamp program regulations did not create a contract between meat wholesaler and United States because "authorization to participate in the [program] was in the nature of a license"); Tammaro v. Bruckman, 173 Misc. 958, 18 N.Y.S.2d 689 (N.Y. Sup. Ct. 1939) (holding that a liquor license, granted for a limited period, gave licensee no vested right nor created any contract between licensee and the state).  Accordingly, the statute cannot be interpreted to manifest a legislative intent to create private rights of a contractual nature enforceable against the State.

2. Contract Based on the Voter Registration Form[9]

The Court is unable to properly consider the existence of a contract since neither party has enclosed the voter registration form alleged to have created a contract right or presented arguments under New York law regarding the alleged contract or its terms.  Accordingly, the Court finds,

---

[9] The Amended Complaint may be read to base its breach of contract claim on an actual or implied-in-fact contract, based on the New York Voter Registration Form.

15

drawing all reasonable inferences in favor of the Plaintiffs, that it does not appear ""beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." See Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994).

### III.    Conclusion

**WHEREFORE**, it is hereby

**ORDERED**, that Defendants' Motions to dismiss (Dkt. Nos. 22, 23, 24, 36, 39, 70, 94, 95, 99, 108, 111, 128, 133, 135, 136, 140, 144, 147, 149, 152, 154, 162, 163, 164, 166, 167, 168, 169, 170, 171, 172, 175, 179, 180, 183, 184, 185, 186, 188, 189, 190, 192, 194, 195, 196, 197, 198, 200, 203, 204, 205) are **GRANTED**; and it is further

**ORDERED**, that the New York Individual Defendants' Motion to dismiss (Dkt. No. 199) is **GRANTED** with respect only to Defendant the New York Board of Elections; and it is further

**ORDERED**, that the New York Individual Defendants' Motion to dismiss (Dkt. No. 199) is **DENIED** with respect to Defendants Neil Kelleher, Douglas Kellner, Evelyn Aquila and Helena Moses Donohue; and it is further

**ORDERED**, that Plaintiffs' Amended Complaint (Dkt. No. 21) is **DISMISSED** with prejudice against the State Defendants and the State Election Board Defendants due to immunity; and it is further

**ORDERED**, that Plaintiffs' Amended Complaint (Dkt. No. 23) is **DISMISSED** without prejudice against the non-New York Individual Defendants for lack of personal jurisdiction; and it is further

**ORDERED**, that all Non-New York Plaintiffs are **DISMISSED** for lack of standing against the remaining New York Individual Defendants; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED.**

DATED:     June 04, 2008
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge