UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT R. SCHULZ, *et al.*,

        Plaintiffs,

        -v.-

STATE OF NEW YORK, *et al.*,

        Defendants.
_____

1:07-CV-0943
(LEK/DRH)

**ORDER**

      Presently before this Court is a cross-Motion for summary judgment filed by Plaintiffs on December 28, 2007. Dkt. No. 223. The Motion for summary judgment had previously been stayed pending the Court's decision on fifty-two (52) Motions to dismiss. Dkt. No. 233. On June 4, 2008, the Court granted fifty-one (51) of the Motions to dismiss, dismissing all non-New York Plaintiffs and all Defendants except for Defendants Neil Kelleher, Douglas Kellner, Evelyn Aquila and Helena Moses Donohue, both individually and in their official capacities as Commissioners of the New York State Board of Elections (hereinafter collectively "Defendants"). Dkt. No. 303. Those Defendants have since filed answers to the Amended Complaint and a response to the Motion for summary judgment. Answers (Dkt. No. 319-323)[1]; Response (Dkt. No. 324). Plaintiffs have submitted a reply. Dkt. No. 327.[2]

---

    [1] The Court notes that the New York State Board of Elections ("NYSBOE") has also filed a Verified Answer to the Amended Complaint in this action. Dkt. No. 323. However, NYSBOE was dismissed as a Defendant by this Court's June 4, 2008 Order and NYSBOE was terminated as a party in this action on that date.

    [2] The Court notes that Plaintiffs' reply is 18 pages long, in violation of Local Rule 7.1(b)(1), which limits reply papers to 10 pages. The Court also notes that Section D of Plaintiff's reply (which is 14 pages long) repeats almost all of the content in Section C of Plaintiff's original Motion

**I.      Background**

Plaintiffs' Amended Complaint, filed on November 1, 2007, asserts that the vote counting process for the 2008 elections violates the Plaintiffs' voting rights, contract rights, and Constitutional rights. See Amended Complaint ("A.C.") at ¶¶ 228-62 (Dkt No. 21). Plaintiffs allege that Defendants violate their rights by using "machines and/or computers" for vote casting and counting, by failing to count ballots by hand, by failing to keep ballots "in public view or in the public custody before the votes are counted and publicly posted at each and every voting station," and by failing to publicly announce the number of votes cast for candidates at each voting station. A.C. ¶¶ 218-20.

In their first cause of action, Plaintiffs allege that the voting procedures used by Defendants infringe on Plaintiffs' right to vote as articulated by the Supreme Court in Burdick v. Takushi, 504 U.S. 428 (1992). A.C. at ¶ 247. In their second cause of action, Plaintiffs allege that the voting procedures are a violation of Plaintiffs' "contract rights," based on the assertion that "[f]ormally registering with the State to vote . . . is a contract." A.C. at ¶ 252. For the third cause of action, Plaintiffs submit a set of voting procedures that they allege Defendants are Constitutionally required to follow during the 2008 primary and general elections. Id. at ¶ 262.

As relief in the Amended Complaint, Plaintiffs seek a permanent injunction preventing Defendants from conducting any election in the 2008 election cycle and beyond unless the election: (1) is "open, verifiable, transparent, machine-free, and computer-free," (2) "rel[ies]

---

for Summary Judgment. Plaintiffs are cautioned that although they are *pro se*, they are expected to comply with the Northern District's Local Rules for all future submissions. See L.R. 7.1(b)(3) ("The Court shall not consider any papers required under this Rule that are not timely filed or are otherwise not in compliance with this Rule unless good cause is shown.").

exclusively on paper ballots, hand marked and hand counted," and (3) "during which said paper ballots [] remain in full public view until the results of the hand counting is publicly announced at that vote station." A.C. at ¶ 268.

Liberally construing the papers, Plaintiffs' cross-Motion for summary judgment appears to make three claims for relief. First, that there are no material facts to the case in dispute; second, that transnational corporations rather than sworn election officials are controlling the election procedures and running the elections; and third, that Defendants actions amount to Constitutional and Voting Rights deprivations.

## II.    Discussion

### A.    Legal Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004). The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (citing Celotex Corp. v. Catrett, supra at 323). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir.

2005) (citing Anderson).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. Nora Beverages, Inc. v. Perrier Group of America, Inc., 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. See Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."). However, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. Scott v. Coughlin, 344 F.3d at 289 (citing Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) and Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).

**B.    Plaintiff's claim that there is no issue of material fact**

In their first claim, Plaintiffs argue that there is no dispute about any material facts in the case. Initially, the Court notes that even if this were true, it would be an insufficient claim, standing alone, to warrant a granting of summary judgment, since Plaintiffs would also need to prove that they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

Each of the material facts will be discussed below.

**1.    Fact 1: Hand-marked and hand-counted votes**

Defendants state that "[m]any votes for President . . . in the upcoming caucuses, primaries and general election will not be marked by hand on paper ballots and hand counted." Pl's Statement of Material Facts ("S.M.F.") at ¶ 1 (Dkt. No. 223, Att. 1). Initially, the Court notes that Plaintiffs cite Fact 1, and several other facts, to "Common knowledge." However, the Local Rules of the Northern District require that the S.M.F. shall set forth, for each fact listed, a specific citation to the record where the fact is established. N.D.N.Y. L.R. 7.1(a)(3). In their reply papers, Plaintiffs only note that Defendants partially agree with this statement. Reply at 3 (Dkt. No. 327). The Court finds this sufficient to establish that there is no dispute to the fact as agreed to by the Defendants. See Response to Pl's S.M.F. at 1 (Dkt. No. 325) (agreeing that "most" of the votes for President in the New York general election will not be marked by hand on paper ballots and hand counted).

**2.    Fact 2: All State Defendants will utilize machines to count votes**

Fact 2, again improperly cited to "Common knowledge," states that "All State Defendants will utilize machines to count some or all votes case for President of the United States in the 2008 Presidential cycle." S.M.F. at ¶ 2. Defendants deny this allegation as unclear, and note in

response that New York is under a federal court order requiring each polling place to have an electronic Ballot Marking Device which will not count votes in any way in the upcoming Presidential election. Response to Pl's S.M.F. at 2. Plaintiffs argue that Defendants have admitted Fact 2 by not submitting documentary evidence to support their denial. However, it is Plaintiffs that bear the initial burden on the motion for summary judgment and which must support their S.M.F. with specific citations to the record where a fact is established. This citation is merely to "Common knowledge", denied by Defendants as "unclear" and refuted by a court order, of which the Court may take judicial notice. Accordingly, the Court finds that Plaintiffs have failed to establish that there is no dispute regarding this material fact.

### 3. Fact 3: Machines count votes in secret

Again, Plaintiffs cite to no document or place in the record to support their claim that "[w]hen machines count votes they do so in secret . . .", but then claim that Defendants have admitted this fact by not supporting their denial with documentary evidence or proof. See S.M.F. at ¶ 3; Reply at 2. Defendants denied this allegation and noted that "[t]he canvass of votes is a public process under Election Law section 9-102." That process allows for, among other provisions, the opening of every machine's counting compartments in the presence of the poll watchers and all other persons who may be lawfully within the polling place, giving full view of all the counter numbers. Since the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant Defendants, Nora Beverages, 164 F.3d at 742, the Court cannot find that Plaintiffs have met their burden of establishing that there is no dispute regarding the generalized claim asserted in Fact 3.

### 4. Fact 4: All vote counting machines are unreliable and insecure

For Fact 4, Plaintiffs cite to an annotated bibliography to support the claim that "credible researchers" have found that "[a]ll vote counting machines have been revealed . . . to be far too unreliable and insecure to ensure the integrity of any election." S.M.F. at ¶ 4. This annotated bibliography is not a sworn affidavit and does not assert within it, or in the S.M.F. such "specific and detailed allegations of fact" as could be treated as evidence in deciding a motion for summary judgment. See Scott v. Coughlin, 344 F.3d at 289 (noting that sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion"). The bibliography merely sets forth opinions of "credible researchers" relating to voting methods or machines not necessarily even in use in New York. Defendants, in their response, denied the allegation and challenged the sufficiency of the "various opinion papers that relate specifically to another states [sic] voting procedures or voting machines." Response to Pl's S.M.F. at 2-3. Accordingly, the Court finds that Plaintiffs have failed to establish that there is no dispute regarding this material fact.

### 5. Fact 5: Reports of vote counting machine failures

Plaintiffs claim that "[d]uring the last five years there have been thousands of reports of vote counting machine failures, involving tens of thousands of machines." S.M.F. at ¶ 5. Plaintiffs cite to an "Election Problem Log", unsworn and unverified, and which, in the pages submitted to the Court, includes no reference to an "election problem" in New York. Id.; Schulz Decl., Ex. M. Defendants have noted in their response that the machines that have been interim certified by New York State in the upcoming election have not yet been utilized in an election, so

that no previous report of their failure could be possible. Response to Pl's S.M.F. at 3. Defendants had also previously noted that the electronic Ballot Marking Device machines to be used in the upcoming election will not count votes in any way in the upcoming Presidential election. Id. at 2. Accordingly, resolving all ambiguities and drawing all reasonable inferences in favor of the Defendants, the Court finds that Plaintiffs have failed to establish that there is no dispute regarding this material fact.

### 6.     Fact 6: Vote count results are not read aloud to the public

Plaintiffs claim that the result of the vote count at each precinct is not read aloud for public consumption at each precinct immediately following the count. S.M.F. at ¶ 6. Defendants deny this allegation, citing in their response to Election Law § 9-122, which specifically requires a public oral proclamation of the election tallies for all candidates for each office. Response to Pl's S.M.F. at 3. Plaintiffs note this dispute in their reply papers. Reply at 2. Accordingly, the Court finds that a dispute exists with regard to this material fact.

### 7.     Fact 7: Tally sheets not posted

Plaintiffs claim that "[a] copy of certified vote tally sheets are not posted on a wall at each precinct for public viewing immediately following the count," and Defendants agree that there is no requirement for vote tally sheets to be posted. S.M.F. at ¶ 7; Response to Pl's S.M.F. at 4. Accordingly, the Court finds that there is no dispute as to this fact, although the Court notes that Plaintiffs have not put forth argument that this fact is material, meaning that it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (citing Anderson).

### 8. Fact 8: Totals reported to central tabulation location

Defendants next claim that in "no State" are the precinct vote totals "immediately communicated to a government supervised central tabulation location in the State to be publicly tabulated, certified and announced, precinct-by-precinct or otherwise." S.M.F. at ¶ 8. Defendants deny the allegation, noting in response that the vote totals, under Election Law section 9-126, are communicated to each county board of elections which in turn certifies the result at that level. Response to Pl's S.M.F. at 4. Section 9-126 also requires that the county boards of elections remain open after the close of the polls, receive and tabulate the voting results from throughout the county as they are received, and post running totals in a public place as the results become known. The Court finds, after resolving all ambiguities and drawing all reasonable inferences in favor of the Defendants, that this required communication of the totals to the county boards of elections and the public tabulation and announcement of the votes is sufficient to establish a dispute regarding this fact.

### 9. Fact 9: Reporting of uncertified voter returns to NEP

Plaintiffs contend that there is no genuine issue for trial regarding the claim that immediately following the voting period in each county, "uncertified voter returns from precincts and counties are turned over by Defendants to representatives of the [NEP], where the resuluts are tabulated by their machines, in secret and out of the public view, and then immediately publicly announced via the NEP cartel . . ." S.M.F. at ¶ 9. Defendants deny the allegation, stating that "[r]esults reported by the media are unofficial and not a function of the State or the counties and have no bearing on the certification of election in New York State." Response to Pl's S.M.F. at 4-5. Plaintiffs claim that, by not supporting their denial with documentary

9

evidence or proof, Defendants have admitted Fact 9. Reply at 2-3. However, Plaintiffs cite as support for this claim several affidavits, which in turn cite "common knowledge" at times. See, e.g., Landes Aff. ¶¶ 13-15. The Court is unable to find that Plaintiffs have met their burden of establishing that there is no genuine dispute regarding this fact.

### 10. Fact 10: Public data does not include precinct-by-precinct breakdown

Plaintiffs next contend, citing to "common knowledge", that the data made available to the public by the NEP does not include any precinct-by-precinct breakdown of the vote. S.M.F. at ¶ 10. Defendants deny the allegation, stating that "[r]esults reported by the media are unofficial and not a function of the State or the counties and have no bearing on the certification of election in New York State." Response to Pl's S.M.F. at 4-5. Plaintiffs claim that, by not supporting their denial with documentary evidence or proof, Defendants have admitted Fact 10. Reply at 3. However, since Plaintiffs merely cite "common knowledge" in support of Fact 10, they have not pointed the Court to any "specific and detailed allegations of fact" as could be treated as evidence in deciding a motion for summary judgment. See Scott v. Coughlin, 344 F.3d at 289. Accordingly, since the Court must resolve all ambiguities and draw all reasonable inferences in favor of the Defendants, the Court finds that Plaintiffs have failed to establish that there is no dispute regarding this material fact.

### 11. Summary of factual disputes

The Court has thus found that there are only two facts on which there is no dispute: Fact1 and Fact 7. However, the Court also noted above that Plaintiffs have not put forth sufficient argument that Fact 7 is material, meaning that it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. In viewing together the 10 facts which Plaintiffs

claim, albeit in a conclusory manner, are material and regarding which Plaintiffs argue there is no genuine issue, the Court finds that Plaintiffs have not established that there is "no genuine issue as to any material facts" in the case. Motion at 13 (Dkt. No. 233).

Nonetheless, in the interest of thoroughness, the Court will also consider whether Plaintiffs could prove, as required for a motion for summary judgment under FED. R. CIV. P. 56(c), that they are entitled to judgment as a matter of law, even if, *arguendo*, there were no dispute regarding material facts in the case.

### C.     Entitlement to judgment as a matter of law

In the rest of the Motion for summary judgment, Plaintiffs claim that transnational corporations rather than sworn election officials are controlling the election procedures and running the elections and that Plaintiffs are entitled to summary judgment as a matter of equity and law based on various Constitutional and Voting Rights deprivations.

In support of their claim, Plaintiffs assert, without support, citation to any law, or explanation, that the voting practices and procedures in question, i.e. voting machines regardless of whether they actually count the votes or not, violate: the First Amendment (there is no clear explanation how), the Fifth Amendment (claiming that the right to have all votes accurately counted is "an unalienable Property Right of each Plaintiff as is his Right to worship freely and his Right to real and personal property"), the Supremacy Clause (there is no clear explanation how), the Ninth Amendment (there is no clear explanation how), the Tenth Amendment (claiming that the "power to control the decision over whether the votes for President [] are to be counted by hand in full public view . . . or in secret . . . is clearly reserved to the People"), and the Fourteenth Amendment (claiming that the actions of one state affect Plaintiffs in other states).

11

Plaintiffs then note that the "federal Constitution assigns to the states the initial responsibility for setting the rules and governing elections" and that this power to regulate elections is "necessary as a way to insure orderly operation of the voting (democratic) process." Motion at 20. Plaintiffs then concede that the states have a compelling interest in regulating elections and that to prevail on their claim, they must prove that the present regulations "will severely burden or prevent the exercise of a substantial constitutional voting right." Id. at 21. Apparently to establish the existence of a "substantial constitutional voting right," Plaintiffs then provide a short litany of sources clarifying that the Constitution guarantees qualified individuals the "right to vote" and the right to have their vote counted.

However, Plaintiffs fail to establish or even to provide any coherent argument in support of the claim that the present regulations or the use of voting machines in New York "will severely burden or prevent the exercise of" the well-recognized right to vote. As an initial matter, to the extent that Plaintiffs are challenging the Constitutionality of any use of a voting machine, the Court notes that the NYSBOE is under court order mandating it to use electronic Ballot Marking Devices in each of New York's polling places as required by federal law. US v. New York State Board of Elections, et al., No. 06-cv-0263 (GLS), January 16, 2008 Supplemental Remedial Order. In examining the New York Election Law, the Court further notes that, like any statute, it is entitled to a strong presumption of constitutionality. See, e.g., Schweiker v. Wilson, 450 U.S. 221, 238 (1981); Matthews v. DeCastro, 429 U.S. 181, 185 (1976); McDonald v. Board of Election Commissioners of Chicago, 394 U.S. 802, 808-09 (1969); Butts v. City of New York, 779 F.2d 141, 147 (2d Circ. 1985).

Therefore, Plaintiffs, who are attacking the constitutionality of a duly enacted state

12

statute, bear the burden of establishing its unconstitutionality. McGee v. Board of Elections of City of New York, 669 F. Supp. 73, 76 (S.D.N.Y. 1987) (citing Metropolitan Cas. Ins. Co. v. Brownell, 294 U.S. 580, 584-86 (1935)). Since Plaintiffs have not shown "invidious discrimination based upon wealth or race classifications or a preclusion of the right to vote, heightened scrutiny is not required." McGee, 669 F. Supp. at 77 (citing McDonald, 394 U.S. at 807); Unity Party v. Wallace, 707 F.2d 59, 63 (2d Cir. 1983). Instead, "the challenged restriction is subject only to a rational basis analysis." Unity Party, 707 F.2d at 63.

The Supreme Court has noted "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." Anderson v. Celebrezze, 460 U.S. 780 (1982) (internal quotation omitted). To achieve that objective, states have enacted "comprehensive and sometimes complex election codes." Id. In reviewing the provisions of those election regulations, the Court noted that although each provision "inevitable affects – at least to some degree – the individual's right to vote and his right to associate with others for political ends", nonetheless "the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." Id.

In reviewing the facts in this case, the majority of which the Court has found are in dispute, the "important regulatory interests" of New York in managing the elections process, the court order requiring New York to use certain voting machines under federal law, and the claimed, albeit disputed, effects of using voting machines, the Court finds that Plaintiffs have failed to establish that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law.

13

**III.    Conclusion**

**WHEREFORE**, based upon the above, it is hereby

**ORDERED**, that Plaintiffs' cross-Motion for Summary Judgment (Dkt. No. 223) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:       September 22, 2008
             Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge