UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT L. SCHULZ and JOHN
LIGGETT,

                      Plaintiffs,

  -against-                                     1:07-CV-0943 (LEK/DRH)

DOUGLAS KELLNER, Individually and
as Commissioner of the New York State
Board of Elections; EVELYN AQUILA,
Individually and as Commissioner of the
New York State Board of Elections;
HELENA MOSES DONAHUE,
Individually; JAMES A. WALSH, as
Commissioner of the New York State
Board of Elections; and GREGORY P.
PETERSON, as Commissioner of the New
York State Board of Elections,[1]

                      Defendants.
_____

**MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

      Presently before the Court is a Motion to dismiss Plaintiffs' amended complaint (Dkt. No. 21), filed by Defendants Douglas Kellner, Evelyn Aquila, Helena Moses Donahue, James A. Walsh, and Gregory P. Peterson ("Defendants"), all of whom are former or current Commissioners of the New York State Board of Elections ("the Board"). Dkt. No. 367 ("Motion"). Plaintiffs filed a

---

[1] On June 4, 2008, the Court dismissed Plaintiffs' claims against all Defendants except the then-State Commissioners of Elections in New York in their official and individual capacities. See Dkt. No. 303. On November 20, 2009, the Court granted Plaintiffs' Motion to substitute Defendants James A. Walsh and Gregory P. Peterson as party-defendants for Defendants Douglas Neil Kelleher and Helena Moses Donahue in their official capacities pursuant to FED. R. CIV. P. 25(d). Dkt. No. 344 at 2. The Court also ordered Plaintiffs' action against Defendant Kelleher terminated entirely on account of his death. Id.

Response in opposition to the motion ("Opposition") (Dkt. No. 374) on January 5, 2011, and Defendants filed their Reply on January 18, 2011 ("Defs.' Reply") (Dkt. No. 377). For the reasons that follow, the Court grants Defendants' Motion.

## II. BACKGROUND

This action originated as a multi-state suit that included claims filed by over one hundred and fifty *pro se* Plaintiffs from all fifty states against their respective states, those states' boards of elections, and individuals involved in their states' election process. Dkt. Nos. 22-24, 36, 39, 70, 94, 95, 99, 108, 111, 128, 135, 136 140, 144, 147, 149, 152, 154, 162-64, 166-72, 175, 179, 180, 183-86, 188-90, 192, 194-200, 203-05. Plaintiffs filed their Amended Complaint on November 1, 2007, asserting that the vote counting process for the 2008 elections violated their voting rights, contract rights, and constitutional rights. See Amended Complaint ("Am. Compl.") (Dkt. No. 21) ¶¶ 228-62. Specifically, Plaintiffs allege that (1) Defendants' voting procedures constitute an impermissible burden upon their rights under the First and Fourteenth Amendments; (2) Defendants' failure to manually count all ballots in public view at each polling station "impair[s] the obligation of contracts" in violation of the Constitution, based on the assertion that "[f]ormally registering with the State to vote . . . is a contract"; and (3) Defendants are required by the Constitution to follow a set of voting procedures submitted by Plaintiffs and have failed to do so. Id. ¶¶ 247, 252, 262.

The initial Defendants filed fifty-two Motions to dismiss the amended complaint, and Plaintiffs filed a Cross-Motion for summary judgment and in opposition to Defendants' motions to dismiss. Dkt. No. 223 ("Plaintiffs' Cross-Motion"). Instead of filing a duplicative motion, the present Defendants joined in the other co-Defendants' Motions, and specifically joined then-Defendant State of Wisconsin's Motion to dismiss ("Wisconsin Motion") (Dkt. No. 162) on the

grounds that the out-of-state Plaintiffs lacked standing.  Todd Valentine Declaration (Dkt. No. 199-2) ¶ 21.  The affidavit filed by Defendants' attorney further stated that "none of the plaintiffs except Robert Schulz, Arthur Berg and John Liggett has any standing to sue the New York defendants . . . ."  Id. ¶ 20.

On June 4, 2008, the Court issued an Order granting fifty-one of Defendants' fifty-two Motions to dismiss while staying Plaintiffs' Cross-Motion.  Dkt. No. 303 ("June 4, 2008 Order").  The Court agreed with those Motions to dismiss that argued that Plaintiffs lacked standing to sue Defendants that were located outside of Plaintiffs' states.  Id. at 3-4.  The Court concluded that "each of the Plaintiffs' standing is limited so as to only have standing against the Individual Defendants in the Plaintiff's own state."  Id. at 4.  The main focus of the June 4, 2008 Order was on the issue of personal jurisdiction, which the Court concluded it only had over the New York Defendants.[2]  Id. at 4-9.  As a result, only New York Plaintiffs[3] and Defendants who were then State Commissioners of Elections in New York ("Election Commissioners") remain as parties to this action, with the addition of two more Election Commissioners pursuant to FED. R. CIV. P. 25(d).  Id.; Dkt. No. 344 at 2.  The Court denied Plaintiffs' Cross-Motion on September 22, 2008, and discovery in this matter has since proceeded.[4]  Dkt. No. 328.

---

[2] The Court also concluded that the States and their respective Election Boards could not be sued because of Eleventh Amendment immunity.  June 4, 2008 Order at 9-10.

[3] A third New York Plaintiff, Arthur Berg, was stipulated out of the litigation on June 5, 2009.  Dkt. No. 337.

[4] According to Plaintiffs, they have provided Defendants with 106 documents in response to Defendants' demands, and Plaintiffs have received documents totaling 44, 414 pages from Defendants.  Plaintiffs' Memorandum of law opposing dismissal of amended complaint ("PML") at 4; Pl.'s Letter Motion requesting extension of discovery deadline (Dkt. No. 365) at 2.  Discovery was scheduled to end on June 1, 2011, although Plaintiffs have filed a Motion requesting an extension, which U.S. Magistrate Judge David R. Homer has ordered will be addressed pending a

On October 13, 2009, Defendants filed an Amended Answer asserting as affirmative defenses (1) that Plaintiffs fail to state a claim upon which relief can be granted; (2) that their actions and conduct "at all relevant times have been fully in compliance with all applicable federal and state constitutional provisions, statutes and regulations"; and (3) that they are entitled to qualified immunity from suit. Dkt. No. 343 ¶¶ 15-17. Over a year later, on December 6, 2010, Defendants filed this Motion to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). Dkt. No. 367.

## III. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1), a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004). However, it is the plaintiff who bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Aurrechione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). Furthermore, subject matter jurisdiction may not be established by drawing inferences from the pleadings favorable to the plaintiff. Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998); see also London v. Polishook, 189 F.3d 196, 199 (2d Cir. 1999) (the party invoking subject matter jurisdiction must "proffer the necessary factual predicate – not just an allegation in a complaint – to support jurisdiction."). Thus, the district court may refer to evidence outside the pleadings, including affidavits or other evidence submitted by the parties, in determining

---

decision on the Motion at hand. See Dkt. No. 382.

whether subject matter jurisdiction exists. Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002); Arndt v. UBS AG, 342 F. Supp. 2d 132, 137 (E.D.N.Y. 2004). Finally, "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. (h)(3).

**IV. DISCUSSION**

Defendants assert that (1) Plaintiffs lack standing to bring this lawsuit; (2) Plaintiffs' constitutional claims are moot; and (3) in the absence of any viable federal claims, the Court lacks jurisdiction over Plaintiffs' breach of contract claim.[5] Defs.' Memorandum of law in support of dismissal of Pls.' amended complaint ("DML") at 4.

Article III of the Constitution grants federal courts limited jurisdiction over only "[c]ases" and "[c]ontroversies." U.S. CONST. art. III, § 2, cl. 1; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). One element of this case-or-controversy requirement requires a plaintiff to establish that he has standing to sue. Raines v. Byrd, 521 U.S. 811, 818 (1997) (citing Lujan, 504 U.S. at 561). Another element requires that "an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Ariz., 520 U.S. 43, 67 (1997) (citing Preiser v. Newkirk, 422 U.S. 395, 401 (1975)). If either of these elements is lacking, the Court must dismiss the action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(h)(3);

---

[5] The Court noted in its June 4, 2008 Order that it was "unclear whether Plaintiffs are raising a constitutional claim under the contract clause or a state-law claim for breach of contract." June 4, 2008 Order at 13. The Court also held that Plaintiffs' claim failed to the extent that it alleged a constitutional violation, but that Plaintiffs' Complaint could be read to allege a plausible state law claim. Id. at 15-16. Plaintiffs make it clear in their Opposition, however, that their claims are not grounded in breach of contract, but in Article I, section 10 of the Constitution. Am. Compl. ¶ 255; PML at 19. The Court will treat this claim as a constitutional one accordingly; as the Court finds that the action warrants dismissal on the other grounds cited by Defendants, though, the Court will address Plaintiffs' Contract Clause claim only in brief.

see also Lujan, 504 U.S. at 560 ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III"); Preiser, 422 U.S. at 401, 404.

As a threshold matter, Plaintiffs claim that Defendants may not move to dismiss the case for lack of subject matter jurisdiction at this juncture because they did not raise the issue in earlier pleadings. PML at 1-4. However, courts "have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*." Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir. 2006). Indeed, Rule 12(h)(3) of the Federal Rules requires that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3) (emphasis added). This Motion to dismiss for lack of subject matter jurisdiction is therefore properly before the Court, and the Court addresses each of Defendants' arguments therein.

**A. Standing**

Defendants argue in their Motion that this case should be dismissed because Plaintiffs meet none of the requirements necessary to establish standing under Article III. DML at 7-13. In their Opposition, Plaintiffs contend that (1) the "law of the case" doctrine applies to this question, and therefore the Court's finding in its June 4, 2008 Order that Plaintiffs had standing to sue Defendants forecloses a finding to the contrary; and (2) in the alternative, Plaintiffs have satisfied all of the constitutional requirements to establish standing under Article III. PML at 1-9.

**1. Law of the Case**

The "law of the case" doctrine is premised on the principle that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Ariz. v. Cal., 460 U.S. 605, 618 (1983). At the same time, the law of the case doctrine "is a discretionary rule of practice and generally does not limit a court's power to resolve an issue."

Liona Corp. v. PCH Assocs., 949 F.2d 585, 592 (2d Cir. 1991); see also Tischmann v. ITT/Sheraton Corp., 145 F.3d 561, 564 (2d Cir. 1998); Doctor's Assocs., Inc., v. Distajo, 107 F.3d 126, 131 (2d Cir. 1997).

Plaintiffs argue that the "law of the case" doctrine applies here, because the June 4, 2008 Order addressed the standing issue when it dismissed the Amended Complaint with respect to the out-of-state Plaintiffs for lack of standing.[6] PML at 3-4 (citing June 4, 2008 Order at 17). Defendants insist that Plaintiffs misconstrue the June 4, 2008 Order, arguing that it does not contain "any discussion of any motion addressed to the in-state Plaintiffs and the issue of subject matter jurisdiction over the claims of the Plaintiffs." Defs.' Reply at 6. While it is true that both the Wisconsin Motion and the June 4, 2008 Order primarily addressed Plaintiffs' lack of standing with respect to the out-of-state Defendants, the Court explicitly stated in the June 4, 2008 Order that "each of the Plaintiffs' standing is limited so as to only have standing against the Individual Defendants in the Plaintiff's own state." June 4, 2008 Order at 4. Defendants joined in the Wisconsin Motion and purported to adopt its argument that Plaintiffs in the case "only" had standing to sue Defendants in their own states. Valentine Decl. ¶¶ 20-21. The Court plainly adopted this argument in its June 4, 2008 Order, albeit in passing, and Defendants cannot contort the statement from that Order to signify otherwise.

---

[6] Plaintiffs also point to a statement in the Valentine Declaration that "[N]one of the plaintiffs **except** Robert Schulz, Arthur Berg and John Liggett has any standing to sue the New York defendants, and the claims of all the plaintiffs **except** Robert Schulz, Arthur Berg and John Liggett should be dismissed as to all the New York defendants." PML at 3 (citing Valentine Decl. ¶ 20) (emphasis added by Plaintiffs). Even if Defendants intended to admit as much, the statement in the Valentine Declaration is irrelevant for purposes of establishing subject matter jurisdiction. Parties may not "waive" defects in subject matter jurisdiction. Ins. Corp. of Ireland v. Compagnie Des Bauxites de Guinee, 456 U.S. 694, 702 (1982); United States v. 27.09 Acres of Land, 1 F.3d 107, 111 (2d Cir. 1993); Cable Television Ass'n of N.Y. v. Finneran, 954 F.2d 91, 94 (2d Cir. 1992) ("[T]he parties may not confer subject matter jurisdiction on the court by consent.").

Nonetheless, Plaintiffs' argument that the law of the case doctrine applies here – an argument which Plaintiffs cite no cases to support – fails as well. Courts in this Circuit have found that "questions of subject matter jurisdiction are generally exempt from law of the case principles," and that "a federal court cannot assert jurisdiction over a claim that is outside the scope of the court's jurisdiction merely by relying on the court's own prior decision that jurisdiction over such a claim was proper." Walsh v. McGee, 918 F. Supp. 107, 112 (E.D.N.Y. 1996) (citing 18 WRIGHT, MILLER & COOPER, § 4478, at 799, n.32); see also Canadian St. Regis Band of Mohawk Indians v. N.Y., 388 F. Supp. 2d 25, 36 (N.D.N.Y. 2005) (holding that law of the case doctrine did not preclude reconsideration of subject matter jurisdiction question); Allah v. Juchnewioz, No. 93CIV8813, 2003 WL 1535623, at *3 (S.D.N.Y. Mar. 24, 2003) (citing Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 47 (2d Cir. 2002)). These findings are consistent with the rule, both embodied in the Federal Rules and articulated by the federal courts, that Article III precludes a federal court from adjudicating a case over which it lacks subject matter jurisdiction. FED. R. CIV. P. 12(h)(3); FW/PBS, Inc., 515 U.S. 737, 742 (1995) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines.") (citations and quotations omitted); Ins. Corp. of Ireland, 456 U.S. at 702 ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court . . . and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.") (internal citations omitted); Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 197 (2d Cir. 2005)**.** Indeed, the Supreme Court held as early as 1799 that "[s]ilence, inadvertence of consent cannot give jurisdiction, where the law denies it." Turner v. Bank of N. Am., 4 U.S. 8, 8 (1799). The Court

therefore rejects Plaintiffs' argument that the law of the case doctrine must govern, and finds that it is obligated to consider Defendants' Motion. See also Doe v. Immigration & Customs Enforcement, No. M-54, 2006 WL 1294440, at *3 (S.D.N.Y. May 10, 2006) (addressing newly raised standing argument on the grounds that "since the issue of subject matter jurisdiction is never waived, the timing of the Government's objection, while unfortunate, is beside the point.").

### 2. Constitutional Standing Requirements

In order to meet the "irreducible constitutional minimum of standing" under Article III, a plaintiff must satisfy three elements: first, that he has suffered "an injury in fact"; second, that there is a "causal connection between the injury and the conduct complained of"; and third, that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560 (internal citations and quotations omitted). In responding to a motion to dismiss, the plaintiff's allegations of standing "need not be crafted with precise detail," Baur v. Veneman, 352 F.3d 625, 631 (2d Cir. 2003), but the plaintiff bears the burden of establishing each of these elements. Lujan, 504 U.S. at 560 (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990); Warth v. Seldin, 422 U.S. at 508 (1975)).

To establish an injury in fact, a plaintiff must show (1) an invasion of a legally protected interest that is (2) concrete and particularized and (3) actual and imminent rather than conjectural or hypothetical. Lujan, 504 U.S. at 560; Whitmore v. Arkansas, 495 U.S. 149, 155 (1990). "[T]he bare existence of an abstract injury is not enough to confer standing." Matter of Appointment of Indep. Counsel, 766 F.2d 70, 76 (2d Cir. 1985). Rather, the party asserting the interest or injury must "have a direct and personal stake in the controversy," lest the judicial process "be converted into a vehicle for the vindication of the value interests of concerned bystanders." Sullivan v.

Syracuse Hous. Auth., 962 F.2d 1101, 1107 (2d Cir. 1992) (citing Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 473, 477-78, 486 & n.22 (1982)) (citations and quotations omitted).

 Defendants assert that Plaintiffs' Amended Complaint is insufficient to allege any of these elements necessary to show an injury in fact. DML at 7-9. First, they argue that Plaintiffs have no legally protected interest in having their votes counted manually and in public at each and every polling station. Id. They also argue that Plaintiffs' Amended Complaint, which alleges that Defendants' voting procedures will result in an inaccurate counting of Plaintiffs' votes, sets forth no injury that is anything more than conjectural or hypothetical. Id. at 9. Plaintiffs respond that they have suffered an injury because "[t]hey were unable to know that their votes were accurately counted," and that this injury will persist in future elections absent relief from the Court. PML at 4-5.

 The Court agrees with both of Defendants' arguments. Plaintiffs correctly point out that they have a legally protected interest in having their votes counted accurately. Am. Compl. ¶¶ 238, 241, 243-44 (citing United States v. Saylor, 322 U.S. 385, 388 (1944); United States v. Classic, 313 U.S. 299, 315 (1941); United States v. Mosley, 238 U.S. 383 (1915)). However, Plaintiffs' Amended Complaint makes clear that they are not alleging a legally protected interest only in having their votes counted accurately. Rather, Plaintiffs are alleging a legally protected interest in having their votes counted in a very particular way – namely, in having their votes counted manually and in full public viewing at every polling station in the state of New York. The Amended Complaint explicitly states: "Voting procedures that are not . . . machine and computer free, with paper ballots that are hand marked and hand counted, abridge the right to cast an effective vote."

Am. Compl. ¶ 246 (citing <u>Williams v. Rhodes</u>, 393 U.S. 23, 30 (1968)).  In order to find that Plaintiffs have established a legally protected interest here, then, the Court would be required to conclude that they have a legally protected interest in having their votes counted manually and in full public viewing.  The Court is unable to reach such a conclusion here.

First, the Court notes that Plaintiffs' reliance on <u>Williams</u> in support of the above assertion is misplaced.  The Supreme Court held in <u>Williams</u> only that voters have the right "to cast their votes effectively"; it did not hold that manual counting of votes is required to protect that right.  See <u>Williams</u>, 393 U.S. at 30.  Second, at least one other court in this Circuit has held that "[t]here is no constitutional right to any particular method of registering and counting votes." <u>Green Party of State of N.Y. v. Weiner</u>, 216 F. Supp. 2d 176, 191 (S.D.N.Y. 2002).  In doing so, the court noted that while the plaintiffs in the case may be correct that it would be "desirable for New York to purchase more or newer voting machines, or to adopt some more modern technology for conducting elections . . . that debate is for the elected representatives of the people to decide . . . ." <u>Id.</u> at 190-91.  The Court also considers that the Supreme Court has instructed the federal courts to be mindful of adjudicating issues that are more appropriately left to the executive or legislative branch:

> Proper regard for the complex nature of our constitutional structure requires neither that the Judicial Branch shrink from a confrontation with the other two coequal branches of the Federal Government, nor that it hospitably accept for adjudication claims of constitutional violation by other branches of government where the claimant has not suffered cognizable injury.

<u>Valley Forge</u>, 454 U.S. at 471 (1982).  As the Court here does not find that Plaintiffs have a legally protected interest in having their votes counted manually and in full public view, the Court cannot find such cognizable injury here, and adjudication of Plaintiffs' constitutional claims is thus

-11-

unwarranted.[7]

Furthermore, the Court finds that Plaintiffs have not alleged a sufficiently concrete and particularized harm to establish standing. The Second Circuit has joined other circuits in holding that "a voter fails to present an injury-in-fact when the alleged harm is abstract and widely shared." Crist v. Comm'n on Presidential Debates, 262 F.3d 193, 195 (2d Cir. 2001). Not only is the alleged injury of which Plaintiffs complain widely shared by all voters in the state of New York, it is an abstract one and as such cannot constitute an injury in fact. Plaintiffs' argument that "[t]hey were unable to know that their votes were accurately counted" is not the kind of "informational injury" that has previously been found to establish standing, for instance, when voters are unable to obtain information that would help them evaluate candidates for office. Cf. Fed. Election Comm'n v. Akins, 524 U.S. 11, 21 (1998). Plaintiffs' allegations in the Amended Complaint that "the

---

[7] Plaintiffs call to the Court's attention, and extensively discuss, a recent decision from the German Constitutional Court holding that electronic voting machines used in that country's 2005 election violated the constitutional principle of transparency of elections. Dkt. No. 374-4, Bundesverfassungsgericht [BverfG] [Federal Constitutional Court] Mar. 3, 2009, Entscheidungen des Bundesverfassungsgerichts [BverfGE] (Ger.), available at http://www.bundesverfassungsgericht.de/en/decisions/rs20090303_2bvc000307en.html. The Court notes that the German Constitutional Court did not find that voting machines in general violated Germany's constitutional principles. See id. ¶¶ 123, 28. Nor did the court invalidate the election results in question, because it concluded that the complainants failed to allege with sufficient specificity that the voting machines actually worked incorrectly or were manipulated in any way, or that the election result would have been different but for the use of the machines in question. Id. ¶¶ 160-64. Moreover, the court expressly declined to order the implementation of any specific voting procedures on the grounds that "regulations relating to the deployment of voting machines are reserved for parliamentary decision," and "[t]he more detailed preconditions for the approval of voting machines and the procedures to be complied with here, the details of the use of the voting machines in the elections and the guarantee of the principles of electoral law in the concrete deployment of voting machines . . . can be regulated by the institution adopting the ordinance." Id. ¶ 137. In any event, the Court acknowledges the helpful comparative perspective that decisions from other nations' courts may offer and the extent to which they may suggest approaches to various legal issues that United States courts have failed to consider. Nonetheless, the German Constitutional Court's decision is not binding on this Court, given that the issues here involve questions of interpretation of the United States Constitution and the law of the state of New York.

inevitability of machine error" and "human fraud" will result in votes being cast for party favorites and disfavor party insurgents also fail to establish concrete or particularized harm. Am. Compl. ¶¶ 249-51. These abstract insurgent candidates are not a party to this lawsuit, and Plaintiffs do not have standing to sue on their behalf. See Crist, 262 F.3d 193, 195 (2d Cir. 2001) (adopting the view of other circuits that "a voter fails to present an injury-in-fact when the alleged harm . . . is only derivative of a harm experienced by a candidate").

Moreover, even construing their Amended Complaint to mean that the machine error and human fraud resulting from Defendants' voting procedures will also harm Plaintiffs – whose votes will allegedly not be counted accurately – the Court finds that these allegations are merely conjectural and hypothetical and do not demonstrate a concrete or particularized injury to Plaintiffs. Plaintiffs have not presented any concrete or specific factual allegations from which the Court could infer, for instance, that their votes were diluted, that they are being disfavored by a gerrymandering scheme, or that they were unfairly denied access to a polling station. See In re United States Catholic Conference, 885 F.2d 1020, 1028 (2d Cir. 1989) (finding a lack of injury in lawsuit challenging Roman Catholic Church's tax exempt status, where plaintiffs had not alleged vote dilution, gerrymandering that disfavored them as voters, that anyone "stuffed the ballot box" with votes for Church-backed candidates, or that anyone had prevented them from voting); Landes v. Tartaglione, No. Civ.A. 04-3163, 2004 WL 2415074, at *3 (E.D.Pa. Oct. 28, 2004) (dismissing complaint of plaintiff alleging unconstitutionality of voting machines because plaintiff offered only speculative allegations that machines were vulnerable to manipulation or failure). Plaintiffs' allegations instead fall within the category of "generalized grievances" – in this case, against the voting procedures adopted by the state of New York and which Defendants are charged with

implementing. See Valley Forge, 454 U.S. at 475 ("[T]he Court has refrained from adjudicating abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches.") (citations and quotations omitted); U.S. Catholic Conference, 885 F.2d at 1026; Forjone v. California, No. 1:06-CV-1002, 2010 WL 653651, at *4 (N.D.N.Y. Feb. 19, 2010) (Kahn, J.) (dismissing voters' suit alleging noncompliance with the Help America Vote Act ["HAVA"] on the grounds that "Plaintiffs allege non-particularized injuries and generalized grievances."); Landes, 2004 WL 2415074, at *3 (finding plaintiff's allegation of injury where machines prevented her from knowing whether her vote was actually cast "amounts to a generalized grievance shared in substantially equal measure by all or a large class of citizens and is not sufficient to confer standing.") (citing Warth, 422 U.S. at 499) (internal quotations omitted).

  Finally, Plaintiffs have highlighted in bold in their Opposition that they have suffered an injury in fact because "[t]heir votes were counted in secret." PML at 4 (emphasis in original). As the Court has discussed above, Plaintiffs do not have a legally protected interest in having their votes counted manually and in public viewing. Defendants cite in their Motion, and the Court considers persuasive, a case in which the Ninth Circuit held that "it is the job of democratically-elected representatives to weigh the pros and cons of various balloting systems," and found that the legislature's decision to use paperless, touchscreen voting systems did not unduly restrict the right to vote. Weber v. Shelly, 347 F.3d 1101, 1106-07 (9th Cir. 2003). Nor, in the view of this Court, does a failure to manually and publicly count all of the ballots in the state of New York unduly restrict Plaintiffs' right to vote. Even if Plaintiffs' allegation that their votes were counted in secret is true, it does not give rise to a concrete and particularized injury that is actual and imminent. Because

Plaintiffs have failed to establish a cognizable injury in this case, the Court finds that they lack standing to bring this case.

**B. Mootness**

Although this case must be dismissed for lack of standing, the Court will also briefly address the issue of mootness raised by Defendants in their Motion. Arizonans for Official English, 520 U.S. at 66-67 (question of whether there is a "live" case or controversy may be determined absent a determination of standing because that issue relates to the Court's Article III jurisdiction and not to the merits of the case). Defendants contend that Plaintiffs' claims are moot, both with respect to (1) the lever voting machines that were in use at the time Plaintiffs filed their Amended Complaint in 2007, because they are no longer in use as a result of the Board's certification of new HAVA-compliant voting machines; and (2) all other voting systems that may be implemented by Defendants in future elections, because Plaintiffs did not allege in their Amended Complaint that they intended to vote in any elections after the primary election in 2008. DML at 14-17. Plaintiffs argue that their claims with respect to the lever voting machines are not moot "[u]nless the Commissioners are willing to stipulate that they will never reintroduce the lever machines should the Court ban the electronic computer-controlled vote counting machines that are also under challenge in this case." PML at 18. They also contend that the portion of their Amended Complaint requesting relief for "the 2008 election cycle and beyond" was "another way of saying they intended to vote in 2008 and beyond." Id.

Like standing, the doctrine of mootness is derived from Article III, which gives federal courts subject matter jurisdiction only over "live" cases and controversies. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Preiser, 422

U.S. at 401 (citations and quotations omitted). A case is deemed moot when "interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 647 (2d Cir. 1998). The mootness doctrine is subject to one exception, however, whereby a case may be deemed "capable of repetition, yet evading review." Fed. Election Comm'n v. Wisc. Right to Life, Inc., 551 U.S. 449, 462 (2007). This exception applies if "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17 (1998).

The Court finds Plaintiffs' claims relating to the lever voting machines are not sufficiently capable of repetition to constitute a live case or controversy at this point. Plaintiffs cite to no cases, nor does the Court find any, that would require Defendants to stipulate to an agreement never to repeat conduct or events that have occurred in the past but since ceased, and where Plaintiffs can offer no reason to presume that said conduct or events will recur, before Plaintiffs' claims may be found moot. See Libertarian Party v. Dardenne, 595 F.3d 215, 217 (2d Cir. 2010) (dismissing as moot and finding political parties failed to establish their case was capable of repetition where they had demonstrated merely a "physical or theoretical possibility" that the Secretary of State of Louisiana would have future opportunities to unilaterally change filing deadlines for qualifying papers because of hurricane) (citing Murphy v. Hunt, 455 U.S. 478, 482 (1982)).

Whether Plaintiffs' claims with respect to other voting procedures are capable of repetition is a closer call. Upon reviewing the Amended Complaint, the Court agrees with Defendants that Plaintiffs failed to allege that they intended to vote in future elections; indeed, there is no mention of

future elections beyond 2008 until the final paragraph requesting injunctive relief relating to the 2008 elections "and beyond." See Am. Compl. ¶ 268. The Court does not consider this final paragraph sufficient to establish a direct relationship between Plaintiffs and all future elections that occurred and will occur after 2008, and which are not referenced anywhere but the final paragraph of the Amended Complaint. See Van Walsh v. Allen, 370 Fed. Appx. 235, 238 (2d Cir. 2010) (finding plaintiff's claim moot where "the election that he sought to affect has passed and he has made no allegation that he intends to campaign or attempt to reconstitute the country committee in the future"), aff'g Van Allen v. Walsh, 1:08-CV-00876 (N.D.N.Y. Sept. 8, 2008) (Kahn, J.); Van Wie v. Pataki, 267 F.3d 109, 115 (2d Cir. 2001) (dismissing as moot claims brought by registered voters who were disallowed from taking part in primary election, on grounds that voters had failed to "adequately demonstrate[] that they will again try to enroll in a political party for purposes of voting in a primary election."). Moreover, dismissing the Amended Complaint without prejudice with respect to this claim and granting Plaintiffs leave to amend would be fruitless in light of the above finding that Plaintiffs do not have standing to bring such claims. For these reasons, the Court also finds that the Amended Complaint does not present a live case or controversy over which the Court may exercise jurisdiction.

### C. Contract Clause Claim

Plaintiffs claim that Defendants' voting procedures violate Article I, Section 10 of the Constitution, which provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. CONST. art. I § 10. In light of the Court's findings above, the Court finds it unnecessary to address these claims, except to note that in its June 4, 2008 Order, the Court held explicitly that "[t]o the extent that [Plaintiffs'] claim is a constitutional one under the contract

clause, it fails." June 4, 2008 Order at 13. Neither party has requested the Court to reconsider that portion of its opinion, and the Court finds no reason to do so here. Defendants are not legislative bodies and therefore are not proper parties in an action pursuant to the Contracts Clause. See Kinney v. Conn. Judicial Dep't, 974 F.2d 313, 314 (2d Cir. 1992) (prohibition in the Contracts Clause "is aimed at the legislative power of the State, and not at the decisions of its courts, the acts of administrative or executive boards or officers, or the doings of corporations or individuals.") (citing New Orleans Water-Works Co. v. La. Sugar Ref. Co., 125 U.S. 18, 30 (1888)); Jamaica Ash & Rubbish Removal Co., Inc., v. Ferguson, 85 F. Supp. 2d 174, 177 (E.D.N.Y. 2000) ("[T]he Contracts Clause applies only to legislative bodies."). Finally, Plaintiffs' Contracts Clause claim warrants dismissal in light of the Court's findings above that (1) Plaintiffs have failed to establish an injury because they do not have a legally protected interest in having their votes counted manually and in public viewing, and therefore lack standing to sue; and (2) their claims are moot under Article III.

**V. CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 367) is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Amended Complaint (Dkt. No. 21) is **DISMISSED** with prejudice for lack of subject matter jurisdiction; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all the parties.

**IT IS SO ORDERED.**

DATED:     July 07, 2011

          Albany, New York

Lawrence E. Kahn
U.S. District Judge